```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                          EASTERN DIVISION
```

UNITED STATES OF AMERICA        )
for the use of LIGHTING AND     )
POWER SERVICES, INC.,           )
                                )
            Plaintiff,          )
                                )
       v.                       )   No. 4:07 CV 1144 DDN
                                )
INTERFACE CONSTRUCTION          )
CORPORATION,                    )
HENDERSON ELECTRICAL SYSTEMS,   )
LLC, and                        )
WESTERN SURETY CO.,             )
                                )
            Defendants.         )

### REPORT AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

This action is before the court on the motion of defendant Interface Construction Corporation to dismiss for lack of jurisdiction and compel arbitration. (Doc. 4.) The matter was referred to the undersigned United States Magistrate Judge for review and a recommended disposition in accordance with 28 U.S.C. § 636(b). A hearing was held on August 27, 2007.

### I.  BACKGROUND

Plaintiff Lighting and Power Services (LPS) brought this action against defendants Interface Construction Corporation (Interface), Henderson Electrical Systems, LLC (Henderson), and Western Surety Co. (Western), under the Miller Act, 40 U.S.C. §§ 3131-3133, for failing to pay for LPS's labor and materials. LPS's complaint alleges that on April 21, 2006, Interface entered into a prime contract with the United States to perform repairs on the U.S. Coast Guard's Robert A. Young Federal Building in St. Louis. To perform the repairs, Interface entered into a subcontract with Henderson. Under the subcontract, Henderson promised to provide labor and materials. (Doc. 1. )

The subcontract between Interface and Henderson was signed on May 5, 2006, and specifically states that the agreement was made between the contractor Interface Construction Corporation and the subcontractor

Henderson Electrical Systems, LLC. (Doc. 4, Ex. A at 1.)  The agreement also notes that the subcontract documents consist of (1) the subcontract; (2) the prime contract; (3) modifications to the prime contract; (4) other documents listed in Article 16 of the subcontract; and (5) modifications to the subcontract issued after its execution. (Id. at 2.)  The agreement between Interface and Henderson contains an arbitration clause.  Under the terms of the arbitration clause,

> § 6.2.1  Any claim arising out of or related to this Subcontract, except claims as otherwise provided in Section 4.1.5 and except those waived in this Subcontract, shall be subject to arbitration.  Prior to arbitration, the parties shall endeavor to resolve disputes by mediation in accordance with the provisions of Section 6.1.
>
> § 6.2.2  Claims not resolved by mediation shall be decided by arbitration which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect.  Demand for arbitration shall be filed in writing with the other party to this Subcontract and with the American Arbitration Association, and a copy shall be filed with the Architect.
>
> . . .
>
> § 6.2.4 Limitation on Consolidation or Joinder.  Except by written consent of the person or entity sought to be joined, no arbitration arising out of or relating to the Subcontract shall include, by consolidation or joinder or in any other manner, any person or entity not a party to the Subcontract under which such arbitration arises, unless it is shown at the time the demand for arbitration is filed that (1) such person or entity is substantially involved in a common question of fact or law, (2) the presence of such person or entity is required if complete relief is to be accorded in the arbitration, (3) the interest or responsibility of such person or entity in the matter is not insubstantial, and (4) such person or entity is not the Architect, the Architect's employee, the Architect's consultant, or an employee or agent of any of them.  This agreement to arbitrate and any other written agreement to arbitrate with an additional person or persons referred to herein shall be specifically enforceable under applicable law in any court having jurisdiction thereof.

(Doc. 4, Ex. A at 6-7.)

Henderson, in turn, entered into a sub-subcontract with LPS. On April 17, 2006, LPS sent Henderson its proposal to furnish electrical

work and equipment for $237,760.00. In its proposal, LPS stated that "This Proposal is to be made an Attachment to the Sub-contract." (Doc. 1, Ex. D at 9.) On April 27, 2006, Henderson's President sent LPS a letter of intent, and notice that LPS should proceed with providing labor for the electrical work of the project. (Doc. 1, Ex. E at 11.)

Western provided a surety bond to Interface for the protection of all persons supplying labor and materials to the project. (Doc. 1. )

In its complaint, LPS alleges Henderson and Interface breached their contract with the United States and LPS by failing to pay LPS the full amount for its services. LPS seeks judgment against Interface, Western, and Henderson, jointly and severally, for the sum of $98,516.04. (Id.)

## II. MOTION TO COMPEL ARBITRATION

Interface argues that the arbitration agreement between Interface and Henderson should govern the dispute with LPS, because LPS benefitted from the terms of this subcontract. In the alternative, Interface points to a forum selection clause in the sub-subcontract between Henderson and LPS, and argues this forum selection clause applies to the dispute between LPS and Interface. Therefore, Interface argues, the case should be brought in the Circuit Court of St. Louis County, Missouri. (Doc. 5.)

In response, LPS argues that it is not bound by the terms of the subcontract, since it was not a party to the subcontract. Unless the arbitration clause was specifically incorporated by the terms of its sub-subcontract, LPS argues that the terms of Interface's subcontract with Henderson do not apply to LPS's claim against Interface. Likewise, LPS argues that Interface was not a party to the sub-subcontract, and therefore, it cannot rely on the forum selection clause. (Doc. 11.)

## III. DISCUSSION

A dispute must be submitted to arbitration if there is a valid agreement to arbitrate and the dispute falls within the scope of that agreement. Lyster v. Ryan's Family Steak Houses, Inc., 239 F.3d 943, 945 (8th Cir. 2001). Under the Federal Arbitration Act, there is a

strong presumption in favor of arbitration. Id. When faced with ambiguous contract language, the language should be construed in favor of arbitration. CD Partners, LLC v. Grizzle, 424 F.3d 795, 798 (8th Cir. 2005). That said, arbitration remains a matter of contract, and a party cannot be required to arbitrate a dispute unless the party has agreed to do so. AgGrow Oils, L.L.C. v. Nat'l Union Fire Ins., 242 F.3d 777, 780 (8th Cir. 2001); Dunn Indus. Group, Inc. v. City of Sugar Creek, 112 S.W.3d 421, 435 (Mo. 2003). "[I]f the parties have not agreed to arbitrate, the courts have no authority to mandate that they do so." Nitro Distrib., Inc. v. Alticor, Inc., 453 F.3d 995, 999 (8th Cir. 2006) (citing Thomson-CSF, S.A., v. Am. Arbitration Ass'n, 64 F.3d 773, 779 (2d Cir. 1995)). "Arbitration is a matter of consent, not of coercion." Id. Ordinary state law contract principles govern whether or not a party has agreed to arbitrate a particular matter. AgGrow Oils, 242 F.3d at 780.

In Thomson, the Second Circuit Court of Appeals identified five theories under which a nonsignatory could be bound to an arbitration agreement signed by another: 1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing or alter-ego; and 5) estoppel. Thomson, 64 F.3d at 776. Each of the five theories derives from common law principles of contract and agency law. Id.

In describing the five theories, the court noted that these theories applied to situations in which a signatory was hoping to bind a nonsignatory - and not the other way around. Id. at 779. "It matters whether the party resisting arbitration is a signatory or not." CD Partners, 424 F.3d at 799 (citing Thomson, 64 F.3d at 776). "The test for determining whether a nonsignatory can force a signatory into arbitration is different from the test for determining whether a signatory can force a nonsignatory into arbitration." Id. This distinction is important. Nitro Distrib., 453 F.3d at 999 (citing Thomson, 64 F.3d at 779). Because arbitration is a matter of consent, a signatory hoping to bind a nonsignatory has a higher burden than would a nonsignatory hoping to bind a signatory. Ingstad v. Grant Thornton, LLP, No. 3:05-cv-98, 2006 WL 3751204, at *5 (D.N.D. Dec. 19, 2006) (citing CD Partners, 424 F.3d at 798-800).

**Incorporation by Reference**

If an arbitration clause is incorporated into another agreement or contract, nonsignatories will be bound by the terms of the incorporated arbitration clause. Thomson, 64 F.3d at 777. Under Missouri law, terms incorporated into a contract by reference are as much a part of the contract as if they had been specifically set out in the contract. Dunn Indus., 112 S.W.3d at 435 n.5. "Under this principle, parties in construction subcontract situations have been held to be subject to arbitration provisions contained in construction contracts that were incorporated by reference into the subcontracts." Id. The corollary is also true. See id. at 436. Where a subcontract does not specifically incorporate by reference the arbitration clause of the prime contract, the arbitration clause will not apply to the subcontract. Id. Mere reference to the prime contract or a "flow-through" clause in the subcontract, are each insufficient to bind a subcontractor to an arbitration clause contained within a prime contract. Case Int'l Co. v. T.L James and Co., Inc., 907 F.2d 65, 66-67 (8th Cir. 1990); id. Absent an express or specific agreement, a party will not have waived its right to ordinary judicial process. Case Int'l, 907 F.2d at 67.

In support of the incorporation theory, Interface relies on Unistrut Space Frame Sys., Inc. v. Atlantic Plate & Window Glass, Co., 16 F. Supp. 2d 1 (D.D.C. 1996). In Unistrut, there were three contracts at issue - the prime contract between the World Bank and Hyman, the subcontract between Hyman and APG, and the sub-subcontract between APG and Unistrut. Unistrut, 16 F. Supp. 2d at 2-3. The court found that Unistrut was bound by the arbitration agreement found in the prime contract. Id. at 4. But unlike this case, Unistrut's sub-subcontract with APG specifically stated that "any claim or dispute which arises. . . shall be governed by the [Prime] Contract Documents." Id. at 3-4. In addition, Unistrut acknowledged that it was bound by an arbitration agreement - it simply argued that the arbitration terms of the subcontract governed its dispute. Id. at 2.

In this case, there is no assertion that any contract LPS signed contained an express arbitration clause. In fact, the language of

§ 6.2.4 seems to suggest that the arbitration clause of the subcontract was intended to apply only to Henderson and Interface. Likewise, there is no allegation that the sub-subcontract between LPS and Henderson incorporated by reference the arbitration language found in the subcontract between Interface and Henderson.

In its reply, Interface argues that the language "[t]his [p]roposal is to be made an attachment to the subcontract," incorporated the arbitration language of the subcontract into the sub-subcontract. (Doc. 13 at 2; Doc 1, Ex. D at 9.) Even assuming this language relates to the subcontract between Interface and Henderson, it does not express a clear intent to incorporate the terms of the subcontract. This language falls well short of the clear and express "shall be governed language" found in <u>Unistrut</u>.

Absent any express or specific language to arbitrate its claim or to incorporate the arbitration terms of another contract, LPS is not bound to arbitrate its claim with Interface under an incorporation by reference theory.

**Assumption**

In the absence of a signature, a party may be bound by an arbitration clause if its conduct indicates that it is assuming the obligation to arbitrate. <u>Thomson</u>, 64 F.3d at 777. In this case, there is no allegation that LPS has assumed the obligation to arbitrate.

**Agency**

Traditional principles of agency may act to bind a nonsignatory to an arbitration agreement. <u>Id.</u> There is no claim of a principal-agent relationship between LPS and either Henderson or Interface.

**Veil Piercing or Alter Ego**

When the corporate relationship between a parent and its subsidiary are sufficiently close, so as to justify piercing the corporate veil, one corporation may be legally accountable for the actions of the other. <u>Id.</u> In this case, there is no allegation of a corporate relationship between LPS and either Henderson or Interface.

**Estoppel**

A nonsignatory may also be bound to an arbitration agreement under an estoppel theory. Id. at 778. "A nonsignatory is estopped from denying its obligation to arbitrate when it receives a 'direct benefit' from a contract containing an arbitration clause." M.A. Mortenson Co. v. Gem Mech. Servs., Inc., Civ. No. 06-2182 (JNE/SRN), 2006 WL 1997367, at *3 (D. Minn. July 14, 2006) (quoting Thomson, 64 F.3d at 778-79). Direct benefit estoppel involves a nonsignatory who embraces the contract despite their nonsignatory status, yet attempts to repudiate the accompanying arbitration clause. Hellenic Inv. Fund, Inc. v. Det Norske Veritas, 464 F.3d 514, 517-18 (5th Cir. 2006). Receiving an indirect benefit is not enough to estop a nonsignatory from avoiding an arbitration clause. Thomson, 64 F.3d at 779.

In its reply memorandum, Interface points to Mortenson, CD Partners, and Dominium Austin Partners, L.L.C. v. Emerson, 248 F.3d 720 (8th Cir. 2001), in an effort to bind LPS under an estoppel theory. (Doc. 5 at 3.) Each of these cases is distinguishable from the current case. Both CD Partners and Dominium concerned situations where signatories were trying to resist an arbitration clause and the nonsignatories were hoping to enforce the arbitration clause under an estoppel theory. CD Partners, 424 F.3d at 798; Dominium, 248 F.3d at 728. In each case, the signatories were suing under provisions of the contract containing the arbitration clause. CD Partners, 424 F.3d at 798; Dominium, 248 F.3d at 728.

Under arbitration law, there is an important distinction between cases where the nonsignatory is hoping to resist arbitration, and cases where the signatory is hoping to resist arbitration. Nitro Distrib., 453 F.3d at 999. In this case, Interface, a signatory, is hoping to bind LPS, a nonsignatory, to arbitration. In CD Partners and Dominium, the nonsignatories were hoping to bind the signatories to arbitration. Accordingly, CD Partners and Dominium are distinguishable.

In Mortenson, M.A. Mortenson Company subcontracted with North East Mechanical Corp. to perform repairs on a U.S. Naval Station. Mortenson, 2006 WL 1997367, at *1. The subcontract between the two parties contained an arbitration clause. Id. After the parties started work,

North East had trouble performing its obligations and was declared to be in default. Id. With the approval of both Mortenson and North East, Gem Mechanical Services stepped in to perform North East's remaining work under the subcontract. Id. In a subsequent dispute between Gem Mechanical and Mortenson, the court found nonsignatory Gem Mechanical had received a direct benefit from the subcontract and was therefore estopped from denying its obligation to arbitrate. Id. at *3.

In Nitro Distrib., five motivational tools businesses associated with the Amway distribution network, sued Amway. Nitro Distrib., 453 F.3d at 997. The motivational businesses were each owned by a distributor, who in turn operated an Amway products business. Id. Amway defended the lawsuit by claiming that the motivational businesses were bound by an arbitration agreement signed by Amway and the related product companies. Id. Despite the relationship, the Eighth Circuit refused to bind the nonsignatory tools businesses under an estoppel theory. Id. at 998-99. While the plaintiffs' businesses may have generally benefitted from the Amway distribution network, the court found that the plaintiffs had not received a direct benefit from the contract between Amway and the product companies. Id. at 998. Absent a direct benefit, the plaintiffs could not be bound to arbitrate under an estoppel theory. Id.

The current case has more in common with Nitro Distrib. than Mortenson. LPS has not received the type of direct benefit Gem Mechanical received. Unlike Gem Mechanical, LPS never had a direct relationship with its general contractor; LPS never stepped in to perform Henderson's work. Instead, LPS only sub-subcontracted with Henderson. Because LPS never received a direct benefit from the subcontract between Interface and Henderson, LPS cannot be bound to arbitrate under an estoppel theory.

**Buckeye Check Cashing**

During the hearing, Interface asserted that the Supreme Court's recent decision in Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440 (2006), compelled LPS to submit to arbitration. In Buckeye, John Cardegna and Donna Reuter entered into several contracts with Buckeye

Check Cashing. Buckeye, 546 U.S. at 442. These contracts contained an arbitration clause. Id. As part of a class action, Cardegna alleged that Buckeye charged usurious interest rates and that the contracts violated Florida's lending and consumer-protection laws. Id. Cardegna argued that his challenge to the contract should be heard by a court and not an arbitrator. See id. at 444-45. The Supreme Court disagreed, stating that when a party does not challenge the validity of the arbitration clause, but instead challenges the validity of the contract containing the arbitration clause, that challenge should be heard by an arbitrator and not a court. Id. at 449.

Buckeye does not apply to the facts of the current case. In Buckeye, the plaintiffs were signatories to the arbitration clause and were not challenging the validity of the relevant arbitration clause. See id. at 443. In this case, LPS is not a signatory to the arbitration clause. Moreover, LPS has not accepted the validity or application of the relevant arbitration clause. The Buckeye decision is therefore inapplicable to the current dispute.

**FORUM SELECTION CLAUSE**

A forum selection clause should control absent a strong showing that it should be set aside. M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972). A forum selection clause should be set aside only where the clause is invalid or unreasonable and unjust. Marano Enters. of Kan. v. Z-Teca Rests., L.P., 254 F.3d 753, 757 (8th Cir. 2001). In this case, the question is not whether the forum selection clause is valid and enforceable, but whether the forum selection clause in the sub-subcontract between LPS and Henderson applies to the dispute between Interface and LPS.[1]

A non-party will be bound to a forum selection clause where the non-party is so closely related to the dispute that it becomes

---

[1] There is some controversy as to whether a motion to dismiss based on a forum selection clause should be brought under Federal Rule of Civil Procedure 12(b)(3) or 12(b)(6). Rainforest Café, Inc. v. EklecCo, L.L.C., 340 F.3d 544, 545 n.5 (8th Cir. 2003). While the question remains open in the Eighth Circuit, the issue does not need to be decided to rule on the current motion. See id.

foreseeable that it will be bound. Marano Enters., 254 F.3d at 757. What it means to be "closely related," or "foreseeable" is not self-evident. Employers Ins. Co. of Wausau v. Equitas Holdings Ltd., 451 F. Supp. 2d 1012, 1024 (W.D. Wis. 2006). "Cases applying the closely related test have almost exclusively involved suits brought by plaintiffs who are bound by a clearly common interest" - such as a corporation and its subsidiary, spouses, and closely affiliated companies. Id. Companies which are merely related through a reinsurance agreement do not generally qualify as "closely related." Id.

The cases within the Eighth Circuit have followed these general rules. For example, a voluntary plaintiff will be bound to the venue governing the claims of the co-plaintiffs. Marano Enters., 254 F.3d at 758. A plaintiff's parent corporation will be bound to the venue governing the claims of its subsidiary. Rainforest Café, 340 F.3d at 546-47; see also Hugel v. Corp. of Lloyd's, 999 F.2d 206, 209-210 (7th Cir. 1993); Manetti-Farrow, Inc. v. Gucci America, Inc., 858 F.2d 509, 514 n.5 (9th Cir. 1988). Finally, an agent of a corporation - like the corporation's founder or president - will be bound by the forum governing the corporation. Vessel Sys., Inc. v. Sambucks, LLC, No. 05-CV-1028-LRR, 2007 WL 715773, at 9-10 (N.D. Iowa March 6, 2007).

In this case, Interface does not contend there is a parent-subsidiary relationship, or principal-agent relationship, between itself and Henderson. Interface does not make any allegation that Henderson and itself are bound by any other clearly common interest. Interface therefore fails to indicate that Henderson and itself are so closely related that it would be foreseeable for the forum selection clause to bind Interface in the action against LPS. Accordingly, the forum selection clause contained in the sub-subcontract does not apply to Interface.

## IV. RECOMMENDATION

Interface has failed to establish that any of the five theories for binding a nonsignatory to an arbitration clause applies to LPS. Interface has also failed to establish that the forum selection clause

should govern its relationship with LPS.  For the reasons stated above, it is the recommendation of the undersigned United States Magistrate Judge that the motion of defendant Interface to dismiss the case and compel arbitration (Doc. 4) should be denied.

The parties are advised that they have ten (10) days in which to file written objections to this Report and Recommendation.  The failure to file timely written objections may result in the waiver of the right to appeal issues of fact.


    /S/   David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on September 11, 2007.