UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATE OF AMERICA, ) <br> for the use of LIGHTING AND ) <br> POWER SERVICES, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> INTERFACE CONSTRUCTION CORP., ) <br> HENDERSON ELECTRICAL SYSTEMS, ) <br> LLC, and ) <br> WESTERN SURETY CO., ) <br> ) <br> Defendants. ) | Case No. 4:07CV1144 ERW |

## **MEMORANDUM AND ORDER**

This matter is before the Court upon the Report and Recommendation of United States Magistrate Judge David D. Noce [doc. #17] pursuant to 28 U.S.C. § 636(b). The Court notes that Defendant Interface has filed a timely Objection to the Magistrate's September 11, 2007 Report and Recommendation [doc. #20]. "[W]hen a party objects to the report and recommendation of a magistrate judge concerning a dispositive matter, '[a] judge of the court shall make a de novo review determination of those portions of the report or specified proposed findings or recommendations to which objection is made.'" *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (*quoting* 28 U.S.C. § 636(b)(1)). Therefore, the Court will conduct a de novo review of those portions of the Report to which Defendant has objected.

After consideration of the issues, the Court hereby sustains, adopts and incorporates herein the Magistrate's Report and Recommendation.

**I.      BACKGROUND**

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

In the Report, the Magistrate recommends that Defendant Interface's Motion to Dismiss and Compel Arbitration be denied. The Magistrate begins by detailing the relationships between these parties and the contracts between these parties. Plaintiff Lighting and Power Services ("LPS") filed the pending action against Defendants Interface Construction Corporation ("Interface"), Henderson Electrical Systems, LLC ("Henderson"), and Western Surety Co. ("Western") (collectively, "Defendants"). LPS brings this suit under the Miller Act,[1] and seeks to recover for LPS's labor and materials. On April 21, 2006, Interface entered into a contact with the United States to repair the U.S. Coast Guard's Robert A. Young Federal Building in St. Louis, Missouri. Interface then subcontracted with Henderson on May 5, 2006 to provide the repairs. This agreement, between Henderson and Interface, ("Subcontract") contains an arbitration clause. The arbitration clause states that;

> § 6.2.1   Any claim arising out of or related to this Subcontract, . . . shall be subject to arbitration.
> . . .
> § 6.4.2   Limitation on Consolidation or Joinder. Except by written consent of the person or entity sought to be joined, no arbitration arising out of or relating to the Subcontract shall include, by consolidation or joinder or in any other manner, any person or entity not a party to the Subcontract under which such arbitration arises, unless it is shown as the time the demand for arbitration is filed that (1) such person or entity is substantially involved in a common question of fact or law, (2) the presence of such person or entity is required if complete relief is to be accorded in the arbitration, (3) the interest or responsibility of such person or entity in the matter is not insubstantial, and (4) such person or entity is not the Architect, the Architect's employee, the Architect's consultant, or an employee or agent of any of them. This agreement to arbitrate and any other written agreement to arbitrate with an additional person or persons referred to herein shall be specifically enforceable under applicable law in any court having jurisdiction thereof.

Subsequently, Henderson contracted with LPS ("Sub-Subcontract") on April 17, 2007. Under the terms of this the Sub-Subcontract, LPS was to furnish electrical work and equipment

---

[1] Codified at 40 U.S.C. §§ 3131-3133.

2

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

for the repair. In its proposal, LPS stated that "[t]his proposal is to be made an Attachment to the Sub-contract." After Henderson accepted LPS's proposal, Western provided a surety bond to Interface for the protection of all persons supplying labor and materials to the project. LPS alleges that Henderson and Interface breached the terms of the Sub-Subcontract by failing the pay LPS the full amount for its services, and is seeking damages from Western, Henderson, and Interface in the amount of $98,516.04.

In the Report and Recommendation, the magistrate considered five theories by which LPS, as a non-signatory to the Subcontract, could be bound to an arbitration agreement within that Subcontract. The Magistrate concluded that LPS could not be bound to arbitrate under any of the five theories. Additionally, the Magistrate found that LPS was not bound to the terms of the forum selection clause in the Subcontract.

## II. DISCUSSION

Interface claims that the Magistrate erred in: (1) applying Missouri law rather than federal precedent, (2) finding that LPS was not bound to the arbitration agreement under the theory of incorporation by reference, (3) finding that LPS was not bound to the arbitration agreement under estoppel theory, and (4) and making a decision contrary to recent Supreme Court precedent.

### A. *ERIE* QUESTION

Interface asserts that the Magistrate erred by citing to Missouri law[2] in the incorporation by reference section of the Report and Recommendation, and that the Federal Arbitration Act should have been applied by the Magistrate. It is well established that "state contract law governs

---

[2] The Court has searched through the Magistrate's Report and Recommendation, and has only found a citation to one Missouri state court opinion. The vast majority of the Report and Recommendation is based on an application of federal law. While the Court agrees with Interface that federal law applies to the determination of whether a party is bound to arbitrate, that does not mean that the Magistrate erred in discussing a factually similar Missouri state court opinion.

3

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

whether an arbitration agreement exists or is valid." *Liberty Mutual Insurance Co. v. Mandaree Public School District # 36*, 459 F. Supp 2d 866, 870 (D.N.D. 2006) (*quoting Lyster v. Ryan's Family Steak Houses, Inc.*, 239 F.3d 943, 945 (8th Cir. 2001)). Courts apply "ordinary state-law contract principles to decide whether parties have agreed to arbitrate a particular matter, giving healthy regard for the federal policy favoring arbitration." *Asia Pacific Indust. Corp. v. Rainforest Café, Inc.*, 380 F.3d 383, 385 (8th Cir. 2004).

However, the determination of whether a party is bound to arbitrate does not actually present a state law question of contract formation or validity. Rather this presents a question of law that must be resolved by "federal substantive law of arbitrability." *International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 417 n.4 (4th Cir. 2000). Federal courts have developed several theories by which non-signatories may be required to arbitrate by a party who has signed the document. *See* Richard A. Lord, 21 Williston on Contracts § 57:19 (4th ed.). These theories were considered, and rejected, by the Magistrate.

**B.    INCORPORATION BY REFERENCE**

One method by which a non-signatory can be bound to an arbitration clause they did not sign is through the doctrine of incorporation by reference. In this case, the parties included the phrase "[t]his [p]roposal is to be made an attachment to the subcontract" in the Sub-Subcontract. The Magistrate determined that this language was not sufficient to bind LPS to the Subcontract they did not sign. Interface objects to this finding, asserting that the parties agreed that the Subcontract and Sub-Subcontract were attached and that Plaintiff agreed to incorporate the Sub-Subcontract as a modification and addition to the Subcontract.

Interface encourages the Court to rely upon the holding in *Unistrut*. *Unistrut Space Frame Sys., v. Atlantic Plate & Window Glass, Co.*, 16 F. Supp 2d 1 (D.D.C. 1996). In *Unistrut*,

4

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

the sub-subcontract declared that "any claim or dispute which arises . . . shall be governed by the [Prime] Contract Documents." *Id.* at 3. This clause was held to be sufficient to bind a sub-subcontractor and subcontractor to an arbitration provision in the prime contract. *Id.* at 3-4. However, *Unistrut* is readily distinguishable from the case before the Court as the terminology in the sub-subcontract in *Unistrut* was much stronger and specifically stated that "any claim or dispute which arises" would be governed by the prime contract. *See id.* at 3. Additionally, it is important to note that the plaintiff in *Unistrut* did not dispute that they were bound by an arbitration agreement, so the sensitive issue of waiving one's right to the judicial process was not raised. *See Case Int'l Co. v. T.L. James & Co.*, 907 F.2d 65, 67 (8th Cir. 1990). Rather, the parties in *Unistrut* were arguing over which arbitration provision applied as there were arbitration clauses in both the prime contract and subcontract.

      The Eighth Circuit has stated that it is "not inclined to find that a party has waived its right to ordinary judicial process without an express and specific agreement." *Case Int'l Co.*, 907 F.2d at 67. A mere reference to the prime contract or a "flow-through" clause[3] in the subcontract is insufficient to bind a subcontractor to an arbitration clause contained within the prime contract. *Id.* at 66-67. Another court that considered this issue found that language in the subcontract making it "subject to the General Contract" was not sufficient to incorporate the arbitration clause into the subcontract. *St. Augustine Pools, Inc. v. James M. Barker, Inc.*, 687 So.2d 957 (Fla. Dist. Ct. App. 1997).

---

[3] Flow-through clauses are common between construction prime contracts and subcontracts. *See Capricorn Power Co. v. Siemens Westinghouse Power Corp.*, 324 F. Supp 2d 731, 751 (W.D. Pa. 2004). They generally state that the subcontractor and contractor are bound to the same rights and obligations as set forth in the general contract between the contractor and the owner.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

The Court also looks to the language of the arbitration clause for guidance. § 6.4.2 of the Subcontract limits who may be brought into an arbitration proceeding under the Subcontract. This limitation indicates that the clause was only intended to apply to the signatories of the Subcontract. The Court agrees with the Report and Recommendation of the Magistrate. The language in the Sub-Subcontract, that "[t]his [p]roposal is to be made an attachment to the subcontract," falls short of the express or specific agreement that is necessary for "a party . . . [to waive] its right to ordinary judicial process." *Case Int'l Co.*, 907 F.2d at 67. Accordingly, LPS is not bound to arbitrate its claim with Interface under the theory of incorporation by reference.

**C.     ESTOPPEL**

A non-signatory to a contract "is estopped from denying its obligation to arbitrate when it receives a 'direct benefit' from a contract containing an arbitration clause." *M.A. Mortenson Co. v. Gem Mech. Servs., Inc.*, 2006 WL 1997367, at *3 (D. Minn. July 14, 2006) (*quoting Thompso-CSF, S.A. v. Am. Arbitration Ass'n.*, 64 F.3d 773, 778-79 (2d Cir. 1995)). This theory seeks to prevent the inequity that would result if one could claim the benefits of a contract without being bound to the other terms in that contract. It is critical that the benefit received be a direct benefit as an indirect benefit is not sufficient to bind a non-signatory to an arbitration clause. *Thompson-CSF, S.A.*, 64 F.3d at 779. The Magistrate found that LPS did not receive a direct benefit from the Subcontract. Interface argues that the Magistrate erred as LPS received the direct benefit from implied warranties detailed in the Sub-Subcontract.

In *American Bureau of Shipping v. Tencara Shipyard S.P.A.*, the non-signatory received the direct benefit of "(1) significantly lower insurance rates . . . and (2) the ability to sail under the French flag." 170 F.3d 349 (2d Cir. 1999). The knowing exploitation of an agreement by using a trade name has also been sufficient for a finding of a direct benefit. *Deloitte Noraudit A/S v.*

6

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

*Deloitte Haskins & Sells, U.S.*, 9 F.3d 1060, 1064 (2d Cir. 1993). However, the Eighth Circuit found that a "benefit in general from the Amway network" was "not the same as directly benefitting" from the contract. *Nitro Distributing, Inc. v. Alticor, Inc.*, 453 F.3d 995, 998 (8th Cir. 2006).

In the present case, the Sub-Subcontract states that the "[i]mplied warranty for plans and specifications from the owner runs through the General Contractor to the Sub-Contractor so that the project can be properly constructed through the plans and specifications." Interface argues that this statement in the Sub-Subcontract is sufficient to create a direct benefit, but this argument fails. This implied warranty was to run "through [Interface] to [Henderson] so that the project can be properly constructed through the plans and specifications." By its own terms, this implied warranty did not run to LPS as the sub-subcontractor. As a result, this warranty did not provide a direct benefit to LPS, and LPS is not bound to the arbitration clause in the Subcontract through the estoppel theory.

### D. DECISION CONTRARY TO RECENT SUPREME COURT PRECEDENT

Finally, Interface argues that the Magistrate's decision is contrary to the Supreme Court's holding in *Buckeye Check Cashing, Inc. v. Cardegna.* 546 U.S. 440 (2006). The plaintiffs in *Buckeye* were signatories to the arbitration clause, and were not challenging its validity. *Id.* at 443. The Supreme Court held that when a party challenges the validity of a contract containing an arbitration clause, the challenge should be heard by an arbitrator and not a court. *Id.* at 449. The Court agrees with the conclusion of the Magistrate judge that *Buckeye* does not apply to the facts of the pending case. In the case at hand, LPS is not a signatory to the arbitration clause and has not accepted the application of the arbitration clause, and as a result, *Buckeye* is inapplicable.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

In the pending lawsuit, the challenge is "to the arbitration clause itself" and this challenge is properly considered by the Court. *See id.* at 449.

### III.  CONCLUSION

The Court finds that the Report and Recommendation of the Magistrate Judge should be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Interface's Objections [doc. #20] are **OVERRULED** and Magistrate Judge Noce's Report and Recommendation [doc. #17] is **AFFIRMED**, and Defendant Interface's Motion to Dismiss and Compel Arbitration [doc. #4] is **DENIED.**

Dated this 20th day of November, 2007.

_____
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE

PDF created with FinePrint pdfFactory trial version www.pdffactory.com